GOSHORN, Chief Justice.
The single issue on appeal is the appellant’s contention that Assistant State Attorney Jeffery L. Ashton violated his constitutional right to remain silent.[1] We agree and reverse.
This case began when a driving encounter between the appellant and David Indi-veri resulted in gunfire. After the incident Indiveri called 911 from his cellular phone and trailed appellant to his place of employment. Indiveri waited at the security gate until the police arrived and brought appellant outside the building where he was immediately identified by Indiveri as the driver who had fired at him.
At issue is whether appellant was in police custody from the time two deputies appeared at his work station, thus rendering any comment by the State on appellant’s failure to immediately raise a defense or explain what happened reversible error. Assistant State Attorney Ashton made several remarks during both his opening statement and closing argument that were objected to by appellant’s counsel. Among these remarks were the following:
MR. ASHTON: And when he did get off the phone, what is the first thing a victim would do?
There’s a police officer standing there. He knows at this point that no one is going to forget this; somebody has reported this to the police.
So his dream of this all going away is no longer there. He knows it’s no longer there. The police officer is standing in front of him.
What’s the first thing any rational person would say when a police officer is standing in front of them and they’ve just been threatened with a gun?
“He threatened me,” even before being asked the question, that’s what he would say.
* * * * * *
MR. ASHTON: Then, not only is the police officer standing next to him, but the police officer asks him to step outside into the hall and tells him that “I'm here investigating what happened to your car this morning.”
And what’s his response? “I know what happened.” Not, “The man pulled a gun on me, officer,” but “I know what happened.”
Why did not [appellant] tell the police office some aspects of the same story he told you here today?
The Florida Supreme Court has unequivocally ruled that once an individual is in custody, his failure to say anything may not be commented upon by the state at trial:
The Miranda rights were established as a prophylactic rule to minimize the coercive atmosphere of custodial interrogation by law enforcement officers. The rule prohibits the use by the state of any statement, whether exculpatory or incul-patory, obtained in a custodial setting unless the procedural safeguards of Miranda are followed. Moreover, “[t]he prosecution may mot ... use at trial the fact that he stood mute or claimed his privilege in the face of accusation.” Mi *1117 randa [v. Arizona,] 384 U.S. [436] at 468 n. 37, 86 S.Ct. [1602 at] 1624-25 n. 37 [16 L.Ed.2d 694 (1966)].
Spivey v. State, 529 So.2d 1088, 1091 (Fla.1988). Under Spivey, it is clear that Assistant State Attorney Ashton’s remarks concerning appellant’s failure to either protest his innocence or cry out his version of the event were improper if appellant was indeed in custody during that period when he sat at his desk, confronted by the deputies as well as moments later, when he was escorted out to the parking lot.
In Caso v. State, 524 So.2d 422, 423-424 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988), the Florida Supreme Court delineated when a person is in custody:
The police are required to give Miranda warnings only when the person is in custody. California v. Beheler, 463 U.S. 1121, 1124, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983). In determining whether a suspect is in custody, “the ultimate inquiry is simply whether there is a ‘formal arrest or restraint on freedom of movement’ of the degree associated with a formal arrest.” Id. at 1125, 103 S.Ct. at 3520 (quoting Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)). As this Court and the United States Supreme Court have previously recognized, “the only relevant inquiry is how a reasonable man in the suspect’s position would have understood his situation.” Roman v. State, 475 So.2d 1228, 1231 (Fla.1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986) (quoting Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984).
In Martin v. State, 557 So.2d 622 (Fla. 4th DCA 1990), the fact that a detective traveled to Tennessee to interrogate the defendant, informed the defendant he was the focus of a police investigation and advised the defendant of the allegations against him sufficed to make the defendant’s interview with the police sufficiently custodial for Miranda to apply. Reversible error was similarly committed in Mosely v. State, 503 So.2d 1356 (Fla. 1st DCA), review denied, 511 So.2d 999 (Fla.1987), because the state failed to give a Miranda warning to the defendant after the defendant voluntarily went to the police station to talk to the police. Reversal turned on the point that the defendant was the target of a police investigation. Likewise, reversal was predicated in Jenkins v. State, 533 So.2d 297 (Fla. 1st DCA 1988), review denied, 542 So.2d 1334 (Fla.1989) on the fact the defendant was the prime focus of an investigation and yet was not given Miranda warnings by the detective when the detective interviewed the defendant at the defendant’s place of business.
In the case at bar, Deputy Sheriff Bryan Villella testified that he arrived at the parking lot of appellant’s place of work and spoke to David Indiveri. Indiveri told Vil-lella his version of what had happened and pointed out the other vehicle involved. After Villella determined that other vehicle was registered to appellant, Villella, accompanied by another officer, located appellant at his work station. Appellant was speaking on his telephone. Villella stated “Sir, we need to speak to you about your car.” When appellant failed to respond to Villel-la’s statement, Villella reached out, hung up appellant’s telephone and said, “Sir, would you step outside with me for just a minute, just a moment or two, into the hallway.” At that point the officers escorted appellant into the hallway, out of the building and into the parking lot where he was immediately identified by Indiveri. Although Villella testified that he did not intend to arrest appellant when he escorted him from his desk and that appellant was free to refuse to accompany the officers, the trial judge concluded otherwise:
I think it’s clear that he [appellant] could not have said, “I’m too busy to go with you. Go away.” That that [sic] would not have happened.
And if he wanted to say, “Well, I’m sorry. I have other duties in another part of the plant.” He [appellant] would not have been permitted to do that.
Clearly appellant was the focus of a police investigation when the two officers confronted him at his desk. Just as clearly, appellant was in custody and thus entitled *1118 to Miranda protection from the moment Villella took the telephone from appellant’s hand, hung it up and escorted him out. It follows therefore that the State’s comments during opening statement and closing argument concerning appellant’s failure to protest his innocence or give his version of the incident violated appellant’s constitutional right to remain silent, requiring reversal and remand for a new trial. Spivey, Caso, Martin, Mosely and Jenkins, supra.
REVERSED and REMANDED.
W. SHARP and COWART, JJ„ concur.

. Appellant’s first trial resulted in a mistrial when Assistant State Attorney Ashton made impermissible comments which violated appellant’s right to remain silent.